All right. Case 16-1932, United States versus Gonzalez, Mr. Barney, hello. Good morning, Your Honors. Good morning again, Your Honors. May it please the Court. My name is Ian Barney and I represent the appellant, Conrad Gonzalez. Mr. Gonzalez was convicted of bank robbery and sentenced to 234 months imprisonment. He has raised two issues on this appeal. The first is that the pre-trial identification procedures used in this case violated his right to due process. And the second is whether plain error occurred when the government introduced evidence connecting him to the robbery of a restaurant that occurred just days before the bank robbery. I will focus primarily on the first issue today. And let me start you off on that, if I might. I would argue that it was a highly suggestive photo array. But I would also argue that there was so much reliable evidence appealed that any error here would have been harmless. So that's where I would appreciate your concentrating on. Certainly, Your Honor. And obviously the harmless error analysis goes to the evidence that was produced at trial absent the suggestive identification. I think what's important to recognize here is that the only direct evidence of Mr. Gonzalez's involvement in this bank robbery is the identification of the bank teller. There's no scientific evidence. There's a video image. There's certainly a video image. That's a live image that people who knew your client reasonably well said was your client. Your Honor, there is a video. Right. And that video, these were people who called in after they saw the video was done independently. It wasn't like the police identified them first. They called in after they saw the video on the news. And they tied him because he had a bare sweater like the one worn by the robber. That was just an additional fact. Correct, Your Honor. There was a video. The video did not show the robber's face. And, in fact, the witnesses that testified to the video and testified to the fact that initially on direct examination, they testified that, yeah, they thought that the man in the video was Mr. Gonzalez. But on cross-examination, they walked that back. When asked, I believe it's Mr. Gonzalez's girlfriend's mother, Ms. Mewetter, I think when she was pressed on that, can you see the individual's face? The answer was no, not really. Ms. Kelly Mewetter, the defendant's, Mr. Gonzalez's girlfriend, testified that she thought it looked like him, but that she couldn't tell for sure. The point is that you can't see the robber's face on the video. He's wearing a hat. The video is poor quality. And I would suggest that those identifications, be it the video, are not terribly compelling. But, I mean, I understand the potential weaknesses with that evidence, but why wouldn't the jury be entitled to credit even with the weaknesses? Well, Judge, I think that certainly the jury should be allowed to assess the credibility of the identifications made by the witnesses of Mr. Gonzalez in the video. We have no bone to pick with that. However, when you inject into the trial not one, not two, but, well, not one but two identifications by the bank teller, as well as information presented to the jury that the police showed up at the bank with Mr. Gonzalez's photo immediately after the robbery, without ever getting the description from anybody at the bank, I don't know how a jury is expected to assess credibility with regard to the identification made in a blurry video when they're presented with all this. Well, there were other facts. The bear sweater, like the one worn by the robber, was found in the dumpster. And then in terms of the hat, that was linked because the man that Gonzalez stayed with the night before testified that he had a similar hat, and it was missing the next day. And Gonzalez said before the robbery that he wanted to do the bank, and then about 20 seconds before the panic button was hit, Gonzalez shows up at the McDonald's allegedly to meet with his daughter. Your Honor, those are all facts. As well as $300 in the debit card, even though he never deposited more than $15 on it. All of those are facts that are in the record, Your Honor. If I could give some of those facts in context. The bear sweater, Mr. Gonzalez was one of six different people who received a bear sweater in that family for Christmas the year before. The same sweater, or sweatshirt, actually. So the fact that the sweater or sweatshirt was found in the dumpster, I think it's certainly a circumstantial piece of evidence, but I don't think it's enough to overcome harmless error. As far as the hat, part of Mr. Gonzalez's defense at trial was that this other individual whose hat was missing, Jonathan Wilson, was in fact the boyfriend of Mr. Gonzalez's ex-girlfriend. And he was of somewhat similar appearance and build to Mr. Gonzalez. Part of the defense was that it was potentially Mr. Wilson who committed the robbery. He couldn't account for his whereabouts at the time of the robbery. Ms. Mewarder testified that Mr. Wilson was, quote, over by the bank at the time the robbery occurred. And as far as the $300, Mr. Wilson, or excuse me, Mr. Gonzalez had received a paycheck, his final paycheck, I think it was four or five days before this incident. And it was his daughter's birthday and she wanted a karaoke machine, and that was the explanation for putting the large amount of money into the bank account. And how much did he make? What was that check for, his payroll check? Remind me of that amount. Your Honor, I cannot recall the exact amount. What was in the record? I cannot recall what was in the record. I certainly would concede it was not a substantial amount of money. It was, I think, less than $1,000. He was doing janitorial work and maintenance at a condo association. These are all certainly circumstantial pieces of evidence. And I would obviously have no problem with the jury assessing these pieces of evidence in the context of whether or not Mr. Gonzalez committed the crime. But I think it's extremely difficult, if not impossible, for the jury to do that properly and consider the defense raised as well as the fact that he did appear at a McDonald's before the sound alarm was even pulled at the bank, which part of his defense was an alibi that I was at the McDonald's at the time. In addition, we know he was texting at 1.07 p.m. The bank, he shows up at McDonald's at 1.11 p.m. The silent alarm goes off at 1.12 p.m. So there is a plausible alibi here. For the jury to consider those things properly, I think that, well, let me back up. I think it would be almost impossible for the jury to consider those things properly and to assess the credibility of the witnesses properly when it's faced with such condemning direct identification evidence by the bank teller, somebody who comes into court and says not only am I identifying Mr. Gonzalez here today in court, but I also identified him on a previous date. Oh, and by the way, the police showed up to the bank with pictures of Mr. Gonzalez, two different pictures of Mr. Gonzalez. The clear indication to the jury is that Mr. Gonzalez was not only the suspect from day one. He was a suspect before the police even got any information about the robbery, and, in fact, he's the one that committed the crime. You can take Ms. Miller's word for it. Well, they did get a description of the robber before they went and got your client's mugshot show, correct? My understanding, Your Honor, is that that is not the case. That they didn't get a description at all before they displayed the picture? That is my reading of the record, Your Honor. My understanding of how this took place is the siren alarm went off, the police show up to the bank, a commander at the bank makes the decision that this could be Conrad Gonzalez,  the backdrop to this, which the jury obviously is not privy of, is that Mr. Gonzalez has a previous bank robbery conviction. The commander at the police station says, this sounds like it could be Conrad Gonzalez. I'm putting those words in her mouth, but why don't you take these two pictures to the bank and show them to the teller? They print out his state ID photo. They print out his driver's license photo. They bring them to the bank, and they show them to Ms. Miller, and they say, is this the man who robbed the bank? She says, no, the man in those photos is not the man who robbed the bank. And I think it's interesting that that understanding that . . . Didn't she say something like it could be or it looked like, one of the photos looked like him? No? She didn't say that? Your Honor, that's what's interesting about this case is that she sees those photos, and she doesn't say, well, it might be, it could be, not sure, let me think about it. She, according to the lieutenant who testified at the suppression hearing, says, the man in those photos is not the man who robbed the bank. Of course, he'd lost some weight after having taken the driver's license photo, and there was some, you know, in the array, it was a more recent color photo. Your Honor, the indication is that he lost weight. There's no testimony as to how much weight he lost. We know that at the time of the robbery, based on some medical records that were found, I think he was 173 pounds. But we don't know what he was before that. We don't know the extent of any weight loss there was. In addition . . . Well, we kind of do know, because we've got his picture from the lineup, and we've got the pictures that were shown to the tellers, and he's lost a lot of weight. I mean, just facially, you can see that. Your Honor, that's certainly, Your Honor's fair reading of the photo. My reading is that they look actually very similar. Well, they're slightly different angles, but in the actual picture, which is fairly clear, doesn't look much like the same person because of the weight loss. I mean, the weight loss is obvious in the face. I think there is definitely some evidence of weight loss in the face. My position, Mr. Gonzalez's position, is that the photos look pretty similar. I mean, we lined them up side by side in the brief. My position is that they look pretty similar. And, in fact, what's also interesting is that at trial, Ms. Miller was presented with these photos again that she saw at the bank. And she was asked by defense counsel, does the man in those photos look like Mr. Gonzalez? And the answer was, yeah, that looks just like Mr. Gonzalez. So she acknowledged that it looked like him. While the other photo may have been more recent, I wouldn't say it was so different that it made a huge difference in our identification. That would, I'm sorry, Your Honor. No, I'm just pointing at that white light. Oh, yeah, Your Honor, unless there's further questions, I'm going to reserve the remainder of my time. Thank you. Thank you, Your Honor. Thank you. Hi, Mr. Peterson. Good morning. Good morning. May it please the Court. The District Court did not clearly error when it denied the defendant's motion to suppress the pretrial and in-court identifications of the defendant by the bank teller, Tara Miller. I'll start, I guess, in response to the Court's questions regarding the harmless error argument. First, I'd like to make a correction of the record. Counsel stated that there was no evidence in the record prior to the officer showing the photographs of Conrad Gonzalez to the bank teller that he fit the description of the bank robber. There was testimony both at the motion to suppress hearing, page 13, one example on page 13 of that transcript. Lieutenant Morgan stated that based on a description that was given of the bank robber, and we know from the trial transcript and motion to suppress transcript that Tara Miller had filled out a bandit description form immediately after the bank robbery that was provided to the officers when they arrived. Based on that description, one of the other officers in the Rock Falls Police Department recognized the description as possibly fitting Conrad Gonzalez. And whose testimony is that, that that's how it happened? Lieutenant Morgan. And then at trial, Detective Wolbert confirmed that that was the case as well. You know, I viewed the photo array online because of the poor quality of the reproduction in the appendix. And I have to tell you, photos three and six are so dark that they are, they're just useless. Well, Your Honor. Yeah. I'm sorry to interrupt. I know I'm not supposed to do that, but that's why I filed a motion to supplement the record with the actual photo array itself. And when it was copied and reproduced for the appendix, the photos did come out much darker. I won't stand here and say that those two photos aren't darker than the other photographs, but you can distinguish characteristics of those two individuals on the actual photo array. But once you take those two out, only one man resembles the description of the robber. And that is Mr. Gonzalez. Only he has a shaved head, appears Hispanic, has the right amount of facial hair. I mean, in what sense is that not suggestive? It just seems so highly suggestive. Well, you stated, Your Honor, that you believe that only one of the other photographs depict an individual with similar characteristics of the bank robber. But the magistrate court who conducted the hearing found otherwise. His determination was that all the individuals in the photo array matched the general description of Conrad Gonzalez and of the bank robber. And they all had either short or a shaved head. And in this case, the bank robber was wearing a hat. So the fact that his head wasn't, some of the other individuals in the photo array, their head wasn't completely shaved, is not necessarily indicative or doesn't make them stand out, given the fact that the bank robber had a hat on and you could only see the sides and the back of the individual's neck. And all six individuals in the photo array, their hair was either shaved or very short. You started out by saying you were going to address harmless error. Is the video grainy and does it not show any facial aspect of the perpetrator? Well, I wouldn't characterize the video as grainy. I suspect you would use a different adjective, but can you see, is there a clear picture of the perpetrator on the video? You cannot clearly see the individual's face. You can see some features of the individual's face at different points during the video. Because he was wearing a hat and because his head was pointed down a lot of the time in the video, it's difficult to see all the facial features. And what was it that, other than the sweatshirt, was it a sweater? What was it that the former girlfriend identified or made her believe that this was indeed the defendant? What was the characteristic? What did she point to in the video that made her think? I think it was a combination of things. The size, the clothing, the limited features that you could see. And also the girlfriend's sister and her mother both also indicated that they believed the photograph that they had seen. And then subsequently the video. And was she dating this other potential that the defendant suggested may have been the one who perpetrated the robbery or at least could have been the one perpetrating it? Were they in a relationship of some kind? At the time of the bank robbery, yes, they were living together. And that's part of the reason why the defendant had access to the hat that was stolen from the apartment because he would periodically, when he came to visit his daughter, stay with Kelly Neuherter and Jonathan Wilson at that apartment. And Jonathan Wilson would leave him there by himself. And that's how he believed possibly that the defendant had taken his hat after he observed it on the video. He went to look for it and it was gone. And was Wilson in the vicinity as well? Kelly Neuherter said that he was in her testimony. She made a comment that he was around or in the area of the bank prior to the bank robbery. Although Jonathan Wilson, the testimony was that after the bank robbery occurred, the police called him on his cell phone. He immediately came back to his house and allowed them to search his house. And I would submit that the jury considered the defendant's argument that Jonathan Wilson was the actual perpetrator of the offense and squarely rejected it. Unlike the defendant, Jonathan Wilson did not have a motive to commit the bank robbery. He had two jobs. He owned rental property in town. He also did not own a sweatshirt identical to the one worn by the bank robber. He didn't get it as a gift as well? No, he did not. He also did not. Is there something particularly unique about this bear sweatshirt? It had some distinguishing features. It was two-toned in color. It had a distinctive logo on the front that was identical to the sweatshirt, the one in the video. But it wasn't as though it was homemade or something like that. It was a commercial product. One-time only edition or autographed by anyone or anything like that. But in addition, unlike the defendant, Jonathan Wilson did not concede that he was driving down the road behind the bank a couple blocks away shortly after the bank robbery. He also, unlike the defendant, did not admit parking in the parking lot of the McDonald's right next to the dumpster where the sweatshirt with $20 bills stuffed inside was located later that day. So our position is that the jury considered the defendant's argument that Jonathan Wilson was the potential perpetrator and squarely rejected it. In addition, Jonathan Wilson did not fit the physical description of the bank robber. He was taller and heavier. He was 5'10 and weighed 220 pounds. The bank robber was described as approximately 5'7 and between 135 and I believe 155 pounds. The defendant, a week after the bank robbery when he was arrested, weighed 173 pounds. A month later, he had gone up to over 180 pounds after being in custody. There was evidence that the defendant had a cocaine addiction, and after he was in custody, he no longer had access to that. That was evidence of his motive, again, that Jonathan Wilson did not have. The magistrate took the teller's word that she wasn't influenced by the earlier photo show up, and we are, you know, we're left with that finding. But isn't the whole point that people do not realize they're being influenced by what they saw earlier? Isn't that the real danger of this kind of procedure? She'll be left genuinely believing that she will be remembering the robber when she's really remembering the photos that, you know, that she was shown after the robbery. Well, Your Honor, I think that's a factor to consider under the totality of circumstances, whether or not her identification was reliable. But in this case, I think all those factors weigh in favor of a finding that her identification was reliable. I know it's not enough. How so? How do they weigh in favor? If anything, I think they weigh against all those factors, notwithstanding the magistrate's finding. She was shown a picture that she said wasn't the defendant or wasn't the perpetrator, and then the next day she's shown an array which includes that picture. She's just been through a fairly traumatic experience. All the brain science says that her brain likely filled in the information, and part of that that was provided to her right after the fact was the picture of the defendant. So when you say all the totality of the factors, what are the factors that give it reliability? Other than that, she seems sure, having been tainted. Well, I mean, that's one of the factors. She had an opportunity to view the bank robber repeatedly. He was only two feet away. The room was well lit. She testified that based on her training she was taught to look at the perpetrator as much as possible. In this case, the two photographs that she was shown were of poor quality. They were in black and white. She was only briefly shown them, and then she was asked by the magistrate judge at the motion to suppress hearing if her identification was influenced by her prior viewing of those photographs, and her testimony was that it was not, and the magistrate judge credited that testimony. That's one of the dangers of identification testimony is people are really sure, and yet the brain fills in all the details. I agree. It seems to be the growing science. I agree that the initial identification procedure showing the two photographs was unnecessary and suggestive, but it's our position that the subsequent photo array was not unnecessary or suggestive. In addition, the law enforcement in this case did not focus solely on Conrad Gonzalez. In fact, the evidence is to the contrary. After Ms. Miller was shown those two poor quality photographs and said she didn't recognize Conrad Gonzalez as the bank robber, they moved on to other suspects and only came back to the defendant when two individuals who knew the defendant very well said they had seen the surveillance photo on the news and recognized him as Conrad Gonzalez. I know it's not in the record, I'm sure, but how big is that town? Do you know? Maybe 10,000 people at the most. It's pretty amazing. You know, you've got a bank robbery. Oh, yeah, I think Mr. Smith down the road. So, Your Honors, unless there's any further questions, we believe that the photo array was not unnecessarily suggestive and, therefore, that the district court did not err when it denied the defendant's motion to suppress. We also would ask the court then to- Not unnecessarily suggestive. Do you think it was suggestive? Pardon me? Do you think it was suggestive at all? Our position is that the photo array was not suggestive, which is what the magistrate court found based on all the factors that I've discussed. And in any event, even if the court did find that, given the overwhelming evidence excluding the identification testimony by Tara Miller, we believe that a reasonable jury would have- When you say overwhelming evidence, what's the- If you're grabbing hold of one piece of evidence you think is overwhelming, what is it? The three identifications by the people that knew the defendant well from viewing the photo array. From the video that was taken? Correct. Which doesn't show the face, is obscured somewhat. That's the overwhelming evidence? Well, in the context of all the rest of the circumstantial evidence, the defendant's lack of a credible alibi, placing himself blocks away from the bank right after the bank robbery occurred, conceding that he parked right next to the dumpster where the sweatshirt was dumped after the bank robbery, the fact that he was at that restaurant- So really it's the combination of all the circumstantial evidence that you'd say was overwhelming. Correct. I mean, you asked what the one- No, I know. The most compelling piece. I guess that was my point. There really isn't a compelling piece of evidence. Okay. So unless there's any further questions, we would ask that the court confirm the conviction and sentence of the defendant. Thank you. Thank you very much. Come on up. I'd like to just address a few points. I will try to go quickly so as to get to them all. First off, I did not represent Mr. Gonzalez at the trial court level or at the motion to suppress. My clear reading, my reading of the record is that they didn't have a description when the decision was made to send these photos to the station. At page 54 of the suppression hearing, the lieutenant said that the commander had a quote-unquote hunch that it was Conrad Gonzalez. My reading is that they didn't have a description. If I'm wrong, I apologize. I will certainly look into that and file something. But the lieutenant at that point did have the form that had been filled out. Judge, I don't think the record says that. But perhaps, maybe that is true, but it's not in the record. I don't know the answer to that question. Thank you. Secondly, as far as the reproduction of the photo, I apologize for the poor quality. The brief was professionally printed. We have it. Yeah. We have it now. We supplemented the record with the original. As to the three witnesses who made these compelling identifications from this video, I'd like to just actually have the quotes in the brief of each of them. On cross-examination, Patricia Mewerter was asked, can you see this person's face well enough to recognize them? The answer was, quote, no, I cannot. That's at page 409, volume 2 of the trial transcripts. Katie Mewerter testified that the still photo of the bank robbery from the video looked like Conrad Gonzalez, quote, a little. That's at page 387, volume 2 of the trial transcripts. And Kelly Mewerter testified that the movement of the individual was, quote, familiar and that she assumed the person in the video was Gonzalez because she recognized the sweatshirt and because her mother and Jonathan Wilson had told her that it was Conrad Gonzalez. And that's at page 301 in volume 2 of the record. So those identifications are not terribly compelling pieces of evidence, I think. And they maybe become compelling when viewed in the context of the identification by Ms. Miller. But I would suggest that the evidence is not so strong here that without that identification, the jury would have convicted Mr. Gonzalez. So for that reason, we are requesting this case be remanded for a new trial. Gosh, thank you both so very much. And you were appointed. I was. And thank you for the really excellent job that you've done for your client. And of course, as always, thanks to the government for the wonderful job they do for us. All right. Listen, everyone. We're going to take a five-minute break. So if anyone needs, you know, to make a phone call or whatever. Thank you. Thank you.